IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Civil Action No.

CARYN MARIE SODARO

     Plaintiff,

v.

CITY AND COUNTY OF DENVER, a municipality;

KEN CHAVEZ, in his individual and official capacities;

JACOB VAPORIS, in his individual and official capacities;

ROBERT FOSTER, in his individual and official capacities;

JOSEPH HECKENKAMP, in his individual and official capacities; and

FERNANDO BENAVIDES III, in his individual and official capacities;

     Defendants.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff Caryn Sodaro, by and through her counsel, Kenneth Mark Burton of the Law Office of Mark Burton, P.C. hereby submits her Complaint and Jury Demand, and states as follows:

## **INTRODUCTION**

1.     Plaintiff Caryn Sodaro was subjected to a humiliating and unconstitutional arrest for simply stating her opinion on the treatment of homeless people to Denver's Mayor Michael Hancock. Her right to express her opinion is protected under the First Amendment of the United States Constitution.

2.     This is a civil action for damages against the City and County of Denver and officers of the Denver Police Department, namely Lt. Ken Chavez ("Chavez"), Jacob Vaporis ("Vaporis"), Robert Foster ("Foster"), Joseph Heckenkamp ("Heckenkamp"), and Fernando Benavides III ("Benavides"), for violation of Plaintiff Caryn Sodaro's ("Ms. Sodaro") First, Fourth, and Fourteenth Amendment rights.

3.      On or about July 15, 2019, during Denver Mayor Michael Hancock's official inauguration ceremony, Ms. Sodaro voiced her concern, for the policies of Mayor Hancock towards the homeless community and, due to her free speech, was unlawfully seized and falsely and maliciously charged for disrupting lawful assembly. This unlawful seizure and the false charges were designed to chill her right to protest and were not supported by probable cause.

4.     Consequently, Ms. Sodaro was injured and deprived of her Constitutional rights to be free from arrest and prosecution in absence of probable cause under the Fourth and Fourteenth Amendment and her rights to free speech under the First Amendment.

5.      Plaintiff Ms. Sodaro seeks compensation for physical and emotional harm, loss of liberty, economic damages, and damages caused by the deprivation of constitutional rights. Further,

Plaintiff seeks punitive sanctions to punish the Defendants, deter future misconduct, and also demonstrate that such wanton and willful misconduct is intolerable.

## JURISDICTION AND VENUE

6.      This action arises under the Constitution and laws of the United States and is brought pursuant to 42 U.S.C. § 1983. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1331.

7.      Jurisdiction supporting Ms. Sodaro's claim for attorney fees and costs is conferred by 42 U.S.C. § 1988.

8.      Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b). All of the events alleged herein occurred within the State of Colorado, and all of the parties were residents of the State of Colorado at the time of the events giving rise to this Complaint

## PARTIES

9.      At all times pertinent to this complaint, the Plaintiff, Ms. Caryn M. Sodaro, was a citizen of the United States and resident of the State of Colorado. Ms. Sodaro presently resides in Denver, Colorado.

10.      Defendant City and County of Denver ("Denver") is a home rule municipality under Article XX, §6 of the Colorado Constitution. Denver Police Department is an agency of the City and County of Denver. Denver and its Police Department's customs, policies, practices, and/or procedures caused the deprivation of Ms. Sodaro's civil rights, and thus pursuant to Federal law is capable of being sued in this Court under 42 U.S.C. § 1983. Denver is responsible for the policies,

customs, and practices of its subsidiary departments, including their failure to train, supervise, or discipline.

11.     At all times relevant to this Complaint, Defendant Ken Chavez was a citizen of the United States and a resident of the State of Colorado. At all relevant times, Defendant Chavez was acting within the scope of his official duties and employment and under color of state law in his capacity as a law enforcement officer for Denver, Colorado.

12.     At all times relevant to this Complaint, Defendant Jacob Vaporis was a citizen of the United States and a resident of the State of Colorado. At all relevant times, Defendant Vaporis was acting within the scope of his official duties and employment and under color of state law in his capacity as a law enforcement officer for Denver, Colorado.

13.      At all times relevant to this Complaint, Defendant Robert Foster was a citizen of the United States and a resident of the State of Colorado. At all relevant times, Defendant Foster was acting within the scope of his official duties and employment and under color of state law in his capacity as a law enforcement officer for Denver, Colorado.

14.     At all times relevant to this Complaint, Defendant Joseph Heckenkamp was a citizen of the United States and a resident of the State of Colorado. At all relevant times, Defendant Heckenkamp was acting within the scope of his official duties and employment and under color of state law in his capacity as a law enforcement officer for Denver, Colorado.

15.     At all times relevant to this Complaint, Defendant Fernando Benavides II was a

citizen of the United States and a resident of the State of Colorado. At all relevant times, Defendant Benavides was acting within the scope of his official duties and employment and under color of state law in his capacity as a law enforcement officer for Denver, Colorado.

## FACTUAL ALLEGATIONS

16.     On July 15 2019 Ms. Sodaro attended the inauguration of Denver's mayor Michael Hancock on the East steps of Denver's City and County Building located at 1437 Bannock St. Denver, CO 80202 which is a traditional public forum.

17.     The inauguration ceremony was conducted on the steps of the City and County Building and there was an area of seating in facing the steps, where members of the public were seated, partially surrounded by a temporary fence. Members of the public who did not have seats were generally standing just behind the temporary fence so they could see the inauguration.

18.     During the ceremony there were various speeches and members of the public were clapping and shouting in support of the speeches, and other were stating opposition to Mayor Hancock on such issues as the mayor's treatment of women and his policies on the homeless.

19.     Ms. Sodaro approached the temporary fence to listen to the inauguration. Mayor Hancock took the podium and people clapped and cheered and called out to the mayor. Ms. Sodaro verbally expressed her disagreement with the mayor on his treatment of the homeless and stated "stop harassing the homeless." She was immediately stopped, detained, handcuffed by Defendants Chavez and Vaporis in retaliation for expressing her point of view.  She was detained under the pretext that she had disrupted a lawful assembly.  Videos of the event show that there

was no disruption of, or cessation of, the inauguration ceremony by her exercising her right to free speech.

20.      Defendants Chavez and Vaporis then took her took her to a location away from the inauguration in a nearby park.

21.      Defendant Foster viewed the entire stop, arrest and detention of Ms. Sodaro by Chavez and Vaporis, who are fellow police officers. Foster saw Plaintiff arrested for expressing her point of view and took no action to stop this violation of Ms. Sodaro's constitutional rights, even though it was clear to him that she did not commit any crime.

22.      At the park, Defendants Chavez and Vaporis were joined by Defendants Hekcenkamp and Benavides who all discussed the actions of Ms. Sodaro.  Heckencamp and Benavides took no action to protect Ms. Sodaro's civil rights, even though it was clear to them that Plaintiff \ had broken no law and simply was arrested in retaliation for expressing her opinion. Heckencamp and Benevides both knew of the speech and actions that was the pretext for Plaintiff's arrest.

23.      The four defendants, Chavez, Vaporis, Heckenkamp and Benavides, discussed the facts and decided to charge Ms. Sodaro with Disrupting a Lawful Assembly in violation of Denver Revised Municipal Code § 38-87 (D.R.M.C. § 38-87) in retaliation for expressing her point of view on Mayor Hancock's treatment of the homeless. This, despite the fact that there was no evidence that Ms. Sodaro had disrupted any lawful assembly. Benavides falsely claimed in a probable cause statement that Ms. Sodaro "began yelling from behind seated patrons and disrupting the event." Benavides and Heckenkamp knowingly agreed to validate Chavez and Varporis' false arrest and retaliation against Ms. Sodaro for her free speech and placed her in a patrol car despite there being no probable cause for her arrest.

24.     Defendants Benavides and Heckencamp took Ms. Sodaro to the Van-Cise Simonet Detention Center in the center of Denver, Colorado to be incarcerated for her speech.  At this facility, Ms. Sodaro was booked into the jail and held there on the charge of disrupting a lawful assembly.

25.     Ms. Sodaro appeared in Denver General Sessions Court on July 16, 2019 in case 19GS0077445 which is the case in which she was charged with Disrupting Lawful Assembly.  On December 13, 2019 the Denver City Attorney's office moved to dismiss case 19GS007445 as there was not probable cause and no factual basis to support the charges due to the fact that Ms. Sodaro was simply exercising her right to free speech when arrested.  The Court granted the City Attorney's motion to dismiss, and the case was closed.

## MUNICIPAL LIABILITY

26.     The Denver Police Department has a long history of targeting activists and protesters. The Denver Police are hostile to protesters, particularly those who call into question the policies of the City and County of Denver. There is a history of targeting, and retaliation against protesters who engage in speech activities in public places that amounts to a custom, policy, or practice of arresting, intimidating and retaliating against protesters, particularly those protests that are critical of the City and County of Denver and its police department in public places in Denver.

27.     For decades, the Denver Police maintained a list of known activists and protesters with secret spy files on more than 3,200 people and 208 organizations. For most of these people and organizations, their only conduct was attending peaceful demonstrations. The Denver Police kept files on them anyway. During this period, Denver Police officers spied on certain protest leaders.

Ultimately, the Denver Police agreed to end certain practices aimed at policing free-speech activities.3

27.     This, however, was not the end of the Denver Police's targeting of activists and Demonstrators and a few cases are mentioned below.

29.     On  August 25, 2009, during the Democratic National Convention that was held in Denver, a solid riot-equipped police stopped a peaceful protest march on 15th street in downtown Denver. A second group of riot police encircled the protesters and conducted a mass arrest of those protesters for marching without a permit. Without probable cause, the Denver Police arrested 96 peaceful protesters.  The police charged the protesters with failing to observe a dispersal order, even though they later acknowledged that no such order was ever given. Nonetheless, the Denver Police continued to target these protesters, refusing to drop the charges. The protesters eventually prevailed on these charges and brought a civil rights action. *Acks v. Denver*, 09-cv-02197. Denver later agreed to a Class Action settlement for depriving these protesters of their constitutional rights.

30.     In the fall of 2011, the Denver Police targeted Occupy protesters, arresting dozens and deploying pepper balls in response to peaceful protests. Many of those demonstrators would continue to protest Denver Police violence and the treatment of the homeless for years to come.

31.     On August 14, 2014, Levi Frasier witnessed DPD officers punch an unarmed civilian numerous times in the head and trip a heavily pregnant woman, causing her to fall to the ground. Believing the officers were committing illegal acts of misconduct, Mr. Frasier video-recorded the officers with his tablet. Upon seeing Mr. Frasier recording, DPD

officers surrounded Mr. Frasier, threatened him with arrest, and demanded he turn over

his video. Mr. Frasier refused, and a DPD officer seized his tablet from him and searched

it illegally. Despite Denver's policy and training on the First Amendment, the officers

nonetheless violated Mr. Frasier's First Amendment right to gather and record

information on matters of public concern.

32.     In July 2015, Eric Brandt and Mark Iannicelli handed out fliers with information about

jury-nullification in front of the Lindsey-Flanigan Courthouse in Denver. Brandt and Iancelli

were charged with Tampering with a Jury .  The trial court dismissed the charges on First

Amendment grounds and the dismissal was affirmed on other grounds in *Ianncelli v. People*, 449

P.3d 387 (Colo. 2019).


33.     On July 5, 2018, Susan Greene, a journalist, was driving to the bank when she saw a

black man handcuffed and naked on the sidewalk across from the State Capitol Building

surrounded by DPD officers. Concerned as a public citizen and journalist by the

questionable appearance of an African-American man unclothed, nonthreatening, and in

handcuffs, Ms. Greene parked her vehicle and began to take pictures on a public sidewalk

where she was not obstructing police investigation. DPD officers told her to stop. Ms.

Greene stated that it was a public sidewalk and that she had the right to take photos. The

officers falsely accused Ms. Greene of violating the arrestee's HIPAA rights and of

blocking the door to an ambulance. The officers then forcefully and painfully arrested

Ms. Greene in retaliation for exercising her First Amendment right to photograph the

police on a public sidewalk and handcuffed her for ten minutes before releasing her. Ms.

Greene was never charged with a crime. Ms. Greene's First Amendment, First

Amendment retaliation, and Fourth Amendment excessive force claims against Denver

and DPD officers were settled in August 2019 for $50,000 in addition to mandating First Amendment training for DPD officers.

34.     On September 23, 2018, Brian Loma and Mikel Whitney were on the 16th Street Mall distributing meals to the homeless with Ms. Sodaro. Shortly after Ms. Sodaro's arrest, Mr. Loma decried the treatment of homeless people - "what we have here [are] … laws that criminalize people who can't pay rent. They don't want your tourist dollars to recognize that we have problems in this city! The laws say that if you're not paying money, you can't sit down." As he continued, Mr. Loma shouted "fuck the police!" He was immediately arrested for disturbing the peace. Mr. Loma and Mr. Whitney have filed a 1983 civil rights claim which is currently ongoing.

35.     On September 24, 2018, Eric Brandt was in the Sixteenth Street Mall protesting the arrests of Ms. Sodaro, Mr. Loma, and Ms. Whitney. Mr. Brandt stood on a public sidewalk and shouted, "we want justice for Caryn Sodaro! Caryn Sodaro is a political prisoner for free speech!" Defendant Kitchens, Defendant Cpl. Chavez, and three other officers were present and closely watching Mr. Brandt. Defendant Kitchens expressed his annoyance and stated loud enough for other people in the mall to hear, "unfortunately, we can't be offended, but if a private citizen is willing to sign a complaint, I'd be happy to arrest him." A woman standing nearby stated that she was offended and would sign a complaint. Defendants Kitchens and Cpl. Chavez then arrested Mr. Brandt in retaliation for his protected speech and cited him with disturbing the peace. Upon making the arrest, Defendant Cpl. Chavez radioed Defendant Guzman explaining that they had Mr. Brandt in custody and that a private citizen was willing to sign a complaint against him. Guzman explained that as long as they had one signed complaint against him, then the arrest was

valid. After spending two days in jail, Mr. Brandt was released, and his charge was dropped the next day, on September 27, 2018.

36.     On May 28, 2020, Agazi Abay, Gabriel Thorn, Amy Schneider, Michael McDaniel, and other similarly situated Plaintiffs protested in Denver to express their outrage at the death of George Floyd and other acts of violence perpetrated by police officers against the African American community. During the demonstration, DPD officers violated the plaintiffs' First Amendment right to free speech and their Fourth Amendment right against excessive force by using pepper spray, pepper balls, rubber bullets, flashbang grenades, and tear gas to punish the plaintiffs for demonstrating against police brutality. On June 5, 2020, Judge Brooke Jackson of the U.S. District Court of the District of Colorado found the defendants in violation of the plaintiffs' First and Fourth Amendment rights and issued a temporary restraining order to enjoin Denver and DPD from employing chemical weapons or projectiles of any kind against persons engaging in peaceful protest.

37.     On or about August 25, 2020 the Denver Police were forcibly removing homeless people from a homeless encampment.  A small crowd of demonstrators gathered and were expressing their disagreement with the police's actions.  The police held up yellow tape to separate the protesters from the police operation.  Michael Sexton was present and was filming the event with a cell phone and may have made some statements protesting the police action.  While Mr. Sexton was on the correct side of the yellow tape away from the police operation, Denver police officer Lt. Faris walked up to Mr. Sexton and sprayed him directly in the eyes with pepper spray causing him pain, temporary blindness, and an extended period of agony. Mr. Sexton was never charged with committing any crime.

38.     Above, is a small selection of incidents where Denver Police targeted protesters, whether for their viewpoint, the manner in which these protesters communicated their message, or simply because the Denver Police do not like the act of protesting.

39. Upon information and belief, the Denver Police have engaged in a concerted effort to target protesters, including Caryn Sodaro.

40.     Denver has an extensive history and widespread practice of unlawful arrests and excessive force in retaliation against the exercise of First Amendment rights, Defendant Denver knew of the need to provide additional or better training and supervision in this respect and made a deliberate choice to not adequately train and supervise DPD officers on the protections of the First Amendment violations.

41.     Defendant Denver knew, or should have known, that its acts or omissions in this regard were substantially certain to cause DPD officers to violate individuals' constitutional rights, and it consciously or deliberately chose to disregard this obvious risk of harm in adhering to the policy and custom of failing to provide additional or better training and supervision to DPD officers regarding the protections of First Amendment.

42.     Defendant Denver could have, and should have, pursued reasonable methods for the training and supervising of such employees, or disciplining them if they engaged in misconduct, but intentionally chose not to do so.

43.     Defendant Denver's custom, practice, and policy of encouraging, condoning, and ratifying the use of arrests or other retaliatory conduct against those who exercise their First Amendment rights, and their custom, policy, and practice of failing to properly train, supervise, and discipline DPD employees despite such history and knowledge or constructive knowledge of such history, were the moving force and proximate cause of

the violations of Plaintiffs' constitutional rights.

44.     Defendant Denver engaged in this conduct intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Plaintiffs' constitutional rights.

45.     Defendants acts or omissions caused Plaintiff damages by their deprivation of liberty through retaliatory arrest and incarceration, and the Plaintiff suffered

mental pain, humiliation, fear, anxiety, loss of enjoyment of life, and sense of security

.

## CLAIMS FOR RELIEF

### First Claim for Relief
### 42 U.S.C. § 1983 – First Amendment Violation
### Free Speech
*Plaintiff Against All Defendants*

46.     Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

47.     At all times relevant to this Complaint, Defendants were acting under the color of law.

48.     Plaintiff was engaged in First Amendment protected speech when she made statements criticizing Mayor Hancock's treatment of the homeless.

49.     Plaintiff's speech was on a matter of public concern and did not violate any law.

50.     By stopping, detaining, and handcuffing Plaintiff, issuing Plaintiff a citation for disrupting disturbing lawful assembly, and initiating the prosecution of Plaintiff, Defendants chilled Plaintiff from exercising her First Amendment rights, including her right to speak freely. Being stopped, issued a citation for disturbing lawful assembly, and prosecuted would chill a person of ordinary firmness from exercising his or her First Amendment rights.

51.     Plaintiff's speech occurred at a traditional public forum. Defendants' conduct violated clearly established rights belonging to Plaintiff of which reasonable persons in Defendants' position knew or should have known. The freedom of individuals to oppose or challenge police action, and to criticize public officials, has been clearly established for over thirty years. *City of Houston v. Hill*, 482 U.S. 451 (1987).

52.     Defendants who did not personally search, arrest, or initiate the prosecution of Plaintiff so as to chill her speech, failed to intervene to prevent the other Defendants from doing so.

53.     Defendants engaged in this conduct intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Plaintiff's constitutional rights.

54.     Defendant Lt. Ken Chavez, as the supervisor on scene, caused, and is liable for, the actions of his subordinate officers.

55.     Defendants detained Plaintiff, arrested Plaintiff, issued her a citation for disrupting a lawful assembly and initiated a malicious prosecution of Plaintiff because she said something critical of Denver's Mayor Hancock.  These actions were in accordance with the customs, policies and practice of Defendant Denver.

56.     Defendant Denver has a custom, practice, or policy of tolerating violations of the First Amendment of the United States Constitution.

57.     Defendant Denver's customs, policies, and/or practices were the moving force behind Defendant' violation of Plaintiff's constitutional rights.

58.     Defendants' actions and/or omissions caused, directly and proximately, Plaintiff to suffer damages.  The acts and inactions of the Defendants caused Plaintiff damages in that she was prevented from speaking freely on a matter of public concern, among other injuries, damages and losses.

**Second Claim for Relief**
**42  U.S.C. 1983 -**
**First Amendment Retaliation**
*Plaintiff Against All Defendants*

59.     Plaintiff Ms. Sodaro hereby incorporates by reference, for all purposes herein, as if fully set forth herein.

60.     At all times relevant to this Complaint, Defendants were acting under the color of law.

61.     Plaintiff was engaged in First Amendment-protected speech.

62.     Plaintiff's speech was on a matter of public concern and Plaintiff did not violate any law. Here speech occurred in a traditional public forum.

63.     Defendants responded to Plaintiff's First Amendment-protected speech by arresting her in retaliation for her speech.

64.     Defendants' retaliatory actions were substantially motivated by Plaintiff's exercise of her First Amendment rights.

65.     Defendants sought to punish Plaintiff for exercising her First Amendment Rights, to silence her future speech, to stop her from continuing to speak, and to restrict her freedom of expression, along with the future speech and expression of others. Defendants' retaliatory actions would chill a person of ordinary firmness from engaging in First Amendment-protected activity.

66.     Defendant's conduct violated clearly established rights belonging to Plaintiff of which a reasonable person in Defendant's position knew or should have known.  Claims for retaliation

against an individual based on her First Amendment -protected speech has been clearly established in the Tenth Circuit for over two decades. *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000).

451 (1987).

67.     Defendants who did not personally search, arrest, or initiate the prosecution of Plaintiff so as to chill her speech failed to intervene to prevent the other Defendants from doing so.

68.     Defendants engaged in this conduct intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Plaintiff's Constitutional rights.

69.     Defendant Lt. Ken Chavez, as the supervisor on scene, caused, and is liable for, the actions of his subordinate officers.

70.     Defendant Denver has a custom, practice, or policy of tolerating violations of the First Amendment of the United States Constitution.

71.     Defendant Denver's customs, policies, and/or practices were the moving force behind Defendant' violation of Plaintiff's constitutional rights.

72.     Defendants' actions and/or omissions caused, directly and proximately, Plaintiff to suffer damages.  The acts and inactions of the Defendants caused Plaintiff damages.

**Third Claim for Relief**
**42  U.S.C. 1983 -  Fourth Amendment Violation**
**Unlawful Seizure**
*Plaintiff Against All Defendants*

73.     Plaintiff Ms. Sodaro hereby incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

74..     At all times relevant to this Complaint, Defendants were acting under the color of law.

75.     Defendants initiated a stop of Plaintiff without reasonable suspicion to believe she was committing any crime.

76.     Defendants did not have probable cause or any other legal basis to believe that Plaintiff had committed or was committing any crime or other violation of the law prior to initiating a stop of Plaintiff and arresting her.

77.     Defendants had no warrant or other legal justification to contact and arrest Plaintiff.

78.     Defendants who did not personally detain or arrest Plaintiff failed to intervene to prevent the other Defendants from stopping, arresting and searching Plaintiff without a warrant, probable cause, or exigent circumstances.

79.     No legally recognizable exigent circumstance existed which would have justified or permitted Defendant's actions.

80.     Defendants' actions were objectively unreasonable in light of the circumstances confronting them.

81.     Defendants' intentional, willful, and wanton seizure of Plaintiff, as described herein, was solely based on Plaintiff's exercise of her First Amendment rights.

82.     Defendants engaged in this conduct intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Plaintiff's Constitutional rights.

83.     Defendant Lt. Ken Chavez, as the supervisor on scene, caused, and is liable for, the actions of his subordinate officers.

84.     Defendant Denver has a custom, practice, or policy of tolerating violations of the Fourth Amendment of the United States Constitution.

85.     Defendant Denver's customs, policies, and/or practices were the moving force behind Defendants' violation of Plaintiff's constitutional rights.

86.     Defendants' actions and/or omissions caused, directly and proximately, Plaintiff to suffer damages.  The acts and inactions of Defendants caused Plaintiff damages.

**Fourth Claim for Relief**
**42  U.S.C. 1983 – Fourth Amendment Violation**
**Malicious Prosecution**
*Plaintiff Against All Defendants*

87.     Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

88.     At all times relevant to the subject matter of this Complaint, Defendants were acting under the color of state law and within the scope of their employment.

89.     Defendants initiated charges against Ms. Sodaro, knowing that there was no basis for those charges or probable cause to believe that Ms. Sodaro had committed any crime, by arresting Ms. Sodaro and citing her with disrupting public assembly.

90.     No probable cause supported Ms. Sodaro's original arrest, confinement, or prosecution.

91.     Defendants' motivation was not to bring to justice a person thought to have committed a crime but for the purpose of punishing Ms. Sodaro for criticizing Denver's mayor.

92.     Defendants acted with malice in initiating the charges against Ms. Sodaro and in her prosecution.

93.     Defendants made the above actions and omissions knowingly, maliciously, willfully and wantonly.

94.     Defendants who did not personally initiate the malicious prosecution of Plaintiff failed to intervene to prevent the other Defendants from doing so.

95.     Defendants' conduct violated clearly established rights of Ms. Sodaro which a reasonable person in the Defendants' positions knew or should have known.

96.     Defendant Lt. Ken Chavez, as the supervisor on scene, caused, and is liable for, the actions of his subordinate officers.

97.     As a legal and proximate result of Defendants' actions and/or omissions described herein, including the unconstitutional custom, policy, or practice of making arrests without probable cause described above from which this malicious prosecution claim arises, Ms. Sodaro has suffered and continues to suffer humiliation, lost earnings, emotional distress, loss of enjoyment of life, and other significant injuries, damages and losses.

98.     The charges against Ms. Sodaro resulting from the actions/omissions of Defendants described herein were dismissed; thus, the original action against Ms. Sodaro terminated in her favor.

99.     Defendants' actions caused Ms. Sodaro damages.

100.    Defendant Denver has a custom, practice, or policy of tolerating violations of the Fourth Amendment of the United States Constitution, particularly condoning malicious prosecutions initiated by police officers without probable cause.

101.    Defendant Denver's customs, policies, and/or practices were the moving force behind Defendants' violation of Plaintiff's constitutional rights.

102.    In addition to compensatory, economic, consequential and special damages, Plaintiff is entitled to punitive damages because the actions of Defendants were undertaken maliciously, willfully or with a reckless disregard of the constitutional rights of Plaintiff.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against the Defendants, and award of all relief as allowed by law and equity, including, but not limited to the following:

a. All appropriate relief at law and equity;

b. Actual economic damages as established at trial;

c. Compensatory damages, including, but not limited to those for past and future pecuniary losses, physical and mental pain, humiliation, fear, anxiety, emotional distress, loss of enjoyment of life, loss of liberty, privacy, sense of security and individual, and other non-pecuniary losses

d. Punitive damages for all claims allowed by law in an amount to be determined at trial;

e. Issuance of an Order mandating appropriate equitable relief, including but not limited to:

    1. Requiring a formal written apology from each Defendant to Plaintiff;

    2. The imposition of policy changes designed to avoid future similar misconduct by Defendants;

    3. Ordering mandatory training designed to avoid future similar misconduct by Defendants;

f. Pre-judgment and post-judgment interest at the highest lawful rate;

g. Attorney' fees and costs; and

h. Such further relief as justice requires.

## **REQUEST FOR TRIAL BY JURY**

Plaintiffs Respectfully Request a Jury On all Issues so Triable.


Dated this 12th day of July 2021.


s/ Kenneth Mark Burton

_____

Kenneth Mark Burton
ATTORNEY AT LAW
The Law Office of Mark Burton, PC
1175 Osage Street, Suite 21o
Denver, CO 80204
Phone 303.517-1187
Fax 303.379-3922
Email: burtonslaw2000@yahoo.com