IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 21-cv-1879-WJM-STV

CARYN MARIE SODARO,

      Plaintiff,

v.

CITY AND COUNTY OF DENVER, a municipality,
KEN CHAVEZ, in his individual and official capacities,
JACOB VAPORIS, in his individual and official capacities,
ROBERT FOSTER, in his individual and official capacities,
JOSEPH HECKENKAMP, in his individual and official capacities, and
FERNANDO BENAVIDES III, in his individual and official capacities,

      Defendants.

---

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

This matter is before the Court on Defendants Ken Chavez, Jacob Vaporis, Robert Foster, Joseph Heckenkamp, and Fernando Benavides III's (collectively, "Officers") Motion for Summary Judgment ('Motion").  (ECF No. 95.)  Plaintiff Caryn Marie Sodaro filed a response (ECF No. 100), and the Officers filed a reply (ECF No. 111).  For the following reasons, the Motion is granted in part and denied in part.

## I. BACKGROUND[1]

This lawsuit arises from Sodaro's arrest on July 15, 2019 at the inauguration of

---

[1] The following factual summary is based on the parties' briefs on the Motion and documents submitted in support thereof.  At the outset, Sodaro's failure to comply with the Court's Practice Standards concerning motions for summary judgment has obfuscated the Court's ability to discern which facts truly remain in dispute.  *See generally* Practice Standard III.F.4.  The Court views the facts set forth herein as undisputed unless specifically attributed to a party or source.  All citations to docketed materials are to the page number in the CM/ECF

then-Denver Mayor Michael Hancock.  (ECF No. 95 at 3 ¶ 1, 4.)  At all relevant times, the Officers were employees of the City and County of Denver acting within the scope of their employment and under the color of state law.  (*Id.* at 3 ¶ 3.)

The inauguration ceremony took place on the steps of the City and County Building ("City Hall").  (*Id.* at 3 ¶ 5.)  There were generally two areas from which members of the public could view the inauguration.  (*See id.*)  At least some members of the public were seated in an area facing the steps of City Hall, which was partially enclosed by a temporary fence.  (*Id.*)  All others who did not have seats in the partially enclosed area "were generally standing just behind the temporary fence so they could see the inauguration."  (*Id.*)

Various speeches were made during the inauguration ceremony.  (*Id.* at 3 ¶ 6.) While Mayor Hancock was speaking, Sodaro approached the temporary fence and "chanted 'stop harassing the homeless' and 'stop the sweeps' over and over again" from "directly behind seated patrons."  (*Id.* at 3 ¶¶ 7-8; *see also* ECF No. 95-3 at 53 (Sodaro testifying at deposition "I was chanting. . . . stop criminalizing the homeless, stop the sweeps, over and over again."); ECF No. 101 at 1:27:00-1:29:00).)  Her chanting was loud enough for other patrons of the inauguration to hear, including at least one member of the press.  (ECF No. 95 at 4 ¶¶ 9-10; ECF No. 95-3 at 55 ("Q: It looks like he is pointing his camera towards you. / A: Yeah. I think he's like the only one. Because he works for the *Denverite*."); *id.* at 57-58 ("Q: At least three or four people there are turned around. / A: Yeah they were right there, yeah.").)  According to the Officers, Mayor Hancock, who was over 30 feet away, could also hear Sodaro.  (*Id.* at 4 ¶ 9; *see also*

---

header, which sometimes differs from a document's internal pagination.

ECF No. 95-3 at 41 ("Q: Does that mean that Mayor Hancock could hear you? / A: I'm sure he could; I wanted him to.").)

As the Officers walked her away from the area where the ceremony was being held, Sodaro continued to yell, "fuck Mayor Hancock" and "stop the homeless sweeps." (ECF No. 95 at 4 ¶¶ 11–12, 14; ECF No. 100-2 at 9 ¶ 12; *see also* ECF No. 95-3 at 41; ECF No. 100-3 at 3.)  According to the Officers, Chavez and Vaporis escorted Sodaro from where she was chanting and "placed her in a D[enver] P[olice] D[epartment] vehicle."  (ECF No. 95 at 4 ¶ 13.)  According to Sodaro, Chavez and Vaporis first "handed [her] off" to Foster, "who in turn handed [her] off" to Heckencamp and Benavides.  (ECF No. 100-2 at 9 ¶ 13.)  Sodaro's arrest was captured on the Officers' Body Worn Cameras ("BWC") (ECF No. 95 at 4 ¶ 15; ECF No. 95-2; ECF No. 95-4), as well as on video captured by Brian Loma, who Sodaro states is a "material witness" (ECF No. 100-1 at 2 ¶ 1).

Sodaro asserts that other individuals at the inauguration were also yelling loudly, including people who were yelling in favor of Mayor Hancock and others who were criticizing him.  (ECF No. 100 at 5 ¶ 5; ECF No. 100-3 at 4-5.)  However, she was the only one arrested.  (ECF No. 100-3 at 5.)  Sodaro also contends that her chanting was not disruptive, at least because Mayor Hancock continued his speech without interruption.  (*Id.* at 4.)

After she was arrested, Heckencamp and Benavides transported Sodaro to the Denver Sheriff Department Van-Cise Simonet Downtown facility.  (ECF No. 95 at 4 ¶ 16.)  Sodaro was ultimately charged with Disrupting a Lawful Assembly in violation of the Revised Municipal Code of the City and County of Denver ("D.R.M.C.") § 38-87.  (*Id.*

at 4 ¶ 17.)  However, the charge was subsequently dropped by the City.  (*Id.;* ECF No. 100-5 (City's motion to dismiss criminal case, citing "no reasonable likelihood of conviction" and order of dismissal).)

Remaining in this lawsuit are Sodaro's (1) First Amendment retaliation, (2) Fourth Amendment unlawful seizure, and (3) Fourth Amendment malicious prosecution claims against the Officers in their individual capacities under 42 U.S.C. § 1983, as well as Sodaro's supervisory liability claims against Chavez.  (*See* ECF Nos. 52, 79; *see also* ECF No. 95 at 3 ¶ 2.)  The Officers move for summary judgment on each of these claims.  (ECF No. 95.)

## II. LEGAL STANDARD

### A.    42 U.S.C. § 1983 and Qualified Immunity

Under 42 U.S.C. § 1983, a person acting under color of state law who "subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ."  "Officers named in a § 1983 action may raise a defense of qualified immunity, which shields public officials . . . from damages actions unless their conduct was unreasonable in light of clearly established law."  *Gutierrez v. Cobos*, 841 F.3d 895, 899 (10th Cir. 2016) (internal quotation marks omitted).

"Once the qualified immunity defense is asserted," as the Officers have done here, "the plaintiff bears a heavy two-part burden to show, first, the defendant[s'] actions violated a constitutional or statutory right, and, second, that the right was clearly established at the time of the conduct at issue."  *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (internal quotation marks omitted).  "If the plaintiff fails to satisfy either part of the inquiry, the court must grant qualified immunity."  *Carabajal v. City of*

*Cheyenne*, 847 F.3d 1203, 1208 (10th Cir. 2017), *cert. denied*, 138 S. Ct. 211 (2017).

"In this circuit, to show that a right is clearly established, the plaintiff must point to a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Gutierrez*, 841 F.3d at 900 (internal quotation marks omitted). "A plaintiff need not show the very act in question previously was held unlawful in order to establish an absence of qualified immunity." *Id.* (internal quotation marks omitted). But "[a]n officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in his shoes would have understood that he was violating it." *City & Cnty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) (internal quotation marks omitted).

Nonetheless, the clearly established inquiry "involves more than a scavenger hunt for prior cases with precisely the same facts. The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Perea v. Baca,* 817 F.3d 1198, 1204 (10th Cir. 2016) (internal quotation marks and citation omitted).

**B.    Rule 56(a)**

As with all motions for summary judgment, "[a]t the summary judgment stage in a qualified immunity case, the court may not weigh evidence and must resolve genuine disputes of material fact in favor of the nonmoving party." *Stonecipher v. Valles,* 759 F.3d 1134, 1141 (10th Cir. 2014) (citing *Tolan v. Cotton,* 134 S.Ct. 1861, 1866 (2014)). Summary judgment is appropriate only if "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In making that determination, a court must view the evidence in

the light most favorable to the opposing party." *Tolan,* 134 S. Ct. at 1866 (citation and quotation marks omitted).

### III. ANALYSIS

**A.     Fourth Amendment Unlawful Seizure (Claim Three)**

The Officers argue they are entitled to qualified immunity on Sodaro's claim for Fourth Amendment unlawful seizure as a matter of law because they had probable cause to arrest her without a warrant for disrupting a lawful assembly under § 38-87. (ECF No. 95 at 13.)  The Officers' qualified immunity defense requires this Court to consider (1) whether the Officers lacked probable cause to arrest Sodaro without a warrant and (2) even if so, whether "it would have been clear to a reasonable officer that probable cause was lacking under the circumstances" in light of clearly established law at the time of Sodaro's arrest in July 2019—that is, whether there was nonetheless "arguable" probable cause. *Koch v. City of Del City,* 660 F.3d 1228, 1241 (10th Cir. 2011).

As further discussed below, the Court concludes arguable probable cause existed to arrest Sodaro for disrupting a lawful assembly based on clearly established law.  As such, Sodaro's Fourth Amendment unlawful seizure claim fails at the second prong, and the Officers are entitled to qualified immunity.  However, as it is important to the Court's resolution of Sodaro's remaining claims, the Court proceeds through the full qualified immunity analysis and first addresses whether the Officers had *actual* probable cause to arrest Sodaro.

1.     <u>Constitutional Violation</u>

There is no dispute that Sodaro was arrested without a warrant.  (ECF No. 95 at 6.)  The Fourth Amendment permits a warrantless arrest only if it is supported by

probable cause. *Bustillos v. City of Artesia,* 98 F.4th 1022, 1027 (10th Cir. 2024) (citing *Moeck v. City of Albuquerque,* 813 F.3d 912, 922 (10th Cir. 2015)).  "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Keylon v. City of Albuquerque,* 535 F.3d 1210, 1216 (10th Cir. 2018).  "When assessing whether an officer had probable cause to arrest an individual, courts 'examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *A.M. v. Holmes,* 850 F.3d 1123, 1139 (10th Cir. 2016) (quoting *Maryland v. Pringle,* 540 U.S. 366, 371 (2003) (internal citation and quotation marks omitted)).  "Neither the officer's subjective beliefs nor information gleaned post-hoc bear on this inquiry." *Manzanares v. Higdon,* 575 F.3d 1135, 1144 (10th Cir. 2009).

Here, the Officers assert probable cause existed to arrest Sodaro for disrupting a lawful assembly pursuant to § 38-87, which provides:

> It shall be unlawful for any person, with the intent to prevent or disrupt any lawful meeting, procession, parade, or gathering, to significantly obstruct or interfere with the meeting, procession, parade or gathering by physical action, verbal utterance, or any other means.

As a general rule, a violation of any provision of the D.R.M.C. prohibiting or declaring an act to be unlawful is a criminal violation.[2]  § 1-13(a); *see also Zerobnick v. Denver,* 337 P.2d 11, 13 (Colo. 1959) ("[V]iolation of an ordinance which is the counterpart of a

---

[2] Although not applicable in this case, a violation may be "declared to be a noncriminal violation upon an admission or finding or judgment of guilt or liability by default or otherwise," in which case the violator will be subject to an applicable penalty.  § 1-13(e).

criminal statute should be tried and punished under the protections applicable to criminal cases even though prosecuted in a municipal court.").

There is no Supreme Court, published Tenth Circuit authority, nor Colorado Supreme Court authority addressing the boundaries of probable cause to arrest for a violation of § 38-87.  Nor is there any Supreme Court or published Tenth Circuit authority addressing the boundaries of probable cause to arrest for a violation of the statutory counterpart to § 38-87 in the Colorado Criminal Code.  *See* C.R.S. § 18-9-108.[3]  However, in 2005, the Colorado Supreme Court undertook a thorough analysis of the requisites for finding a statutory offense of disrupting a lawful assembly (*i.e.,* pursuant to § 18-9-108), particularly in light of First Amendment principles like the ones at issue in this case.  *See Dempsey v. People,* 117 P.3d 800, 805 (Colo. 2005).  The Court thus looks to *Dempsey* as informative of its analysis as to whether the Officers' interpretation of the disrupting lawful assembly ordinance was one that a reasonable officer would have held at the time Sodaro was arrested.  *Cf. Kaufman v. Higs,* 697 F.3d 1297, 1301 (10th Cir. 2012).[4]

---

[3] § 18-9-108 provides:

> (1) A person commits disrupting lawful assembly if, intending to prevent or disrupt any lawful meeting, procession, or gathering, he significantly obstructs or interferes with the meeting, procession, or gathering by physical action, verbal utterance, or any other means.

> (2) Disrupting lawful assembly is a petty offense; except that, if the actor knows the meeting, procession, or gathering is a funeral, it is a class 2 misdemeanor.

[4] In *Kaufman,* the Tenth Circuit looked to the very same Colorado Supreme Court case when analyzing whether the defendant officers had probable cause to arrest a § 1983 plaintiff for violating Colorado's obstruction of justice statute—a separate offense which is not at issue here.  697 F.3d at 1301-02 (citing *Dempsey*, 117 P.3d at 810-12).  The Tenth Circuit reasoned that, while "[t]he basic federal constitutional right of freedom from arrest without probable cause

a.      *Dempsey*

Recognizing that "one of the goals of free speech may be to induce dissension," the *Dempsey* court observed that "laws designed to maintain th[e] balance" between the right of free expression and the right of free association and discussion must be "constrained to punish *conduct,* not *content* of speech." 117 P.3d at 805–06. In keeping with this, the *Dempsey* court concluded the unlawful disruption statute was appropriately "focused on punishment for actual disruption" (*i.e.,* conduct, not content) because it critically requires (1) "that the defendant intends the disruption" and (2) "that a significant disruption occurs." *Id.* at 806 (emphasis added).

Relevant to the intent requirement are "two notions." *Id.* at 807. "First, the nature of the assembly or meeting defines the bounds of appropriate protest," as informed by "the implicit customs and usages or explicit rules germane to a given meeting." *Id.* at 807-08 (internal citation and quotation marks omitted). As Judge Marcia S. Krieger of this District once summarized when applying *Dempsey*, "outdoor events tolerate more disruption than indoor ones, and . . . political conventions might expect 'prolonged, raucous, boisterous demonstrations' whereas funeral services would not." *Oransky v. Martin Marietta Materials, Inc.,* 400 F. Supp. 3d 1143, 1148 (D. Colo. 2019) (quoting *Dempsey,* 117 P.3d at 808-09). The second notion is "whether the defendant intended to disrupt the event—or, stated otherwise, whether the defendant was aware that his conduct was inconsistent with the customs of the assembly and whether he thereby

_____

is undoubtedly clearly established by federal cases,'" "the precise scope of that right uniquely *depends on the contours of a state's substantive criminal law* [where] the Defendants claim to have had probable cause based on a state criminal statute." *Id.* at 1300–01 (emphasis added). "And as to the interpretation of Colorado's criminal law, other than the statute itself . . . , Colorado's Supreme Court is the ultimate authority." *Id.* at 1301.

intended his conduct to disrupt the assembly significantly." *Dempsey,* 117 P.3d at 808.

Applying these principles in *Dempsey*, where Dempsey had been convicted for disrupting a lawful assembly after he used a bullhorn at "a political campaign rally held in an open-air venue"—the Pearl Street Mall in Boulder—the court concluded "the nature of the meeting . . . anticipate[d] dissent—even disruptive dissent." *Id.* The event was "centered on support for various ballot initiatives and congressional candidates" and a candidate for United States Senate, Tom Strickland, was scheduled to speak. *Id.* "The event was opened to the public, and people could come and go at will." *Id.* At such an event, the court concluded the "custom or usage anticipates that persons with opposing views would appear and seek to voice opposition either to the ballot initiatives or the speakers." *Id.* Indeed, "[s]igns supporting candidates were planted on the nearby courthouse lawn and supporters of candidates were carrying similar signs." *Id.*

As to whether Dempsey intended to disrupt the event, the Colorado Supreme Court found the evidence in the record to be, at best, inconclusive. *Id.* "[T]he record d[id] not indicate whether members of the audience other than Dempsey and his associates carried or used bullhorns." *Id.* Conversely, the record did show "that the officers did not initially tell Dempsey that he could not use the bullhorn." *Id.* at 808. Declining to "say as a matter of law that the use of a bullhorn at a noisy open-air political rally falls outside the range of acceptable protest activity at such an event"—particularly as "[o]ne might certainly envision circumstances where even supporters at the rally could use bullhorns to chant support"—the court instead proceeded to analyze the second element: "whether the evidence at trial proved that Dempsey's use of the bullhorn actually impaired or otherwise significantly disrupted the rally." *Id.* at 808-09.

The Colorado Supreme Court defined "significant" as "conduct that effectively impaired, interfered with or obstructed the due conduct of the meeting in a consequential, significant or considerable manner." *Id.* at 806 n.11 (citation omitted). As applied to Dempsey, the court found "the record contained insufficient evidence from attendees to establish significant disruption." *Id.* at 809.  Dempsey had testified "that in response to his use of the bullhorn, some members of the crowd clapped and others approached the group." *Id.*  However, "[t]here was no evidence that the rally stopped, or was interrupted." *Id.*  Moreover, "other than the three officers who approached Dempsey, there [was] no other evidence of individuals who complained about Dempsey." *Id.*  And "[t]he record [was] undisputed that Dempsey's activity was directed at Strickland," but "no evidence at trial indicated that Strickland's speech was interrupted, even minimally, by Dempsey's display." *Id.* at 809-10.  Indeed, "the evidence indicated that at the time the defendant spoke into the bullhorn, the primary speaker . . . had not appeared on stage . . . ." *Id.*

b.  *Probable Cause to Arrest Sodaro*

Viewing the facts in the light most favorable to Sodaro, and considering the Colorado Supreme Court's analysis in *Dempsey*, the Court concludes that genuine issues of material fact preclude it from finding the Officers had probable cause to arrest her as a matter of law for disrupting a lawful assembly.

The Court first considers the nature of the event at issue and whether Sodaro exhibited sufficient intent to disrupt to support probable cause.  On the broad spectrum between a "raucous" partisan campaign rally and a church service, the Court acknowledges that the inauguration ceremony likely falls somewhere ambiguously in between.  However, viewing the evidence in the light most favorable to Sodaro, at least

11

the following facts suggest boisterous, even disruptive demonstrations were contemplated, and that she did not intend to cause a significant disruption in view of same:

- The event took place in an "open-air venue" in downtown Denver, on the steps of City Hall (ECF No. 95-6 at 1 ¶ 1; ECF No. 95-7 at 1 ¶ 1; ECF No. 100-2 at 2-3 ¶ 4);

- The ceremony was open to the public, and at least as it pertains to the area behind the temporary fence, the evidence submitted suggests people were free to come and go (ECF No. 95-7 at 1 ¶ 3; ECF No. 100-2 at 2-3 ¶¶ 4-5; ECF No. 101);

- The video evidence clearly shows other individuals shouting and applauding at various points throughout the inauguration ceremony— either in approval or disapproval—and milling around with signs purportedly advocating for various causes (ECF No. 101; ECF No. 100-2 at 3 ¶ 8 ("During the ceremony, therein [*sic*] were various speeches presented by government officials, that were responded to by the public with clapping and or shouting in support of the individuals and their speech very loudly."); ECF No. 100-3 at 74-75 (testifying "[t]here were quite a few others" "making noise," including "people making noise in favor of the mayor" and "other people who were criticizing the mayor")).

*Cf. Dempsey,* 117 P.3d at 808 ("[A]t a noisy open-air, partisan event, where banners, and slogans and shouting are involved, and the crowd is tacitly invited to demonstrate its approval of the speaker and his party through applause, cheers, and friendly

expletives; it is to be expected that those of opposing views in the audience are likely to convey vociferously their disapproval in an orderly but vocal way.").

With respect to whether Sodaro's chanting in fact caused a "significant disruption," Sodaro testified at a deposition that "when they were taking [her] away," the audience was "applauding the speech and what [Mayor Hancock] said, at the time, because it connected . . . So all the people behind him could hear the speech because they were applauding his speech." (ECF No. 100-3 at 4). In other words, in spite of her chanting, "[t]he ceremony proceeded without delay or interruption." (ECF No. 100-2 at 5 ¶ 13.) Indeed, the audience can be heard clearly applauding the ceremony moments after Sodaro is detained in the video evidence submitted by both parties. (ECF No. 101; *see also* ECF No. 95-2; ECF No. 95-4.)

The Court acknowledges that other evidence in the record could lead reasonable minds to find that Sodaro's protest activity was unacceptable in the circumstances of this event, that she exhibited sufficient intent to disrupt, and that she was indeed disruptive enough to justify her warrantless arrest. For instance, Sodaro agreed at a deposition to drawing the attention of "three or four people," with at least one member of the press among them. (ECF No. 95-3 at 55, 57.) However, similar to the Court in *Dempsey,* this Court is unprepared to say such facts support a probable cause determination that she caused a "significant disruption" of the inauguration ceremony as a matter of law. It is the jury's role, not the Court's, to weigh such facts.

As such, genuine issues of material fact preclude the Court from finding probable cause supported Sodaro's arrest as a matter of law.

2. Clearly Established Law

Notwithstanding this finding, applicable precedent dictates that in the qualified

immunity context, even officers who reasonably but mistakenly conclude that probable cause is present are entitled to immunity. *Romero v. Fay,* 45 F.3d 1472, 1476 (10th Cir. 1995). Therefore, "when a warrantless arrest or seizure is the subject of a § 1983 action, the defendant is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to arrest or detain the plaintiff." *Cortez v. McCauley,* 478 F.3d 1108, 1120 (10th Cir. 2007). "In other words, . . . an officer may be mistaken about whether he possesses *actual* probable cause to effect an arrest, so long as the officer's mistake is reasonable—*viz.,* so long as he possesses 'arguable probable cause.'" *A.M. v. Holmes,* 830 F.3d 1123, 1139-40 (10th Cir. 2016). Thus, the Court is tasked with determining whether the "facts and circumstances within the arresting officer[s'] knowledge and of which [they] ha[d] reasonably trustworthy information" were *arguably* "sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense" in light of clearly established law. *Id.* at 1138 (quoting *Keylon*, 535 F.3d at 1216).

Sodaro cites a 1925 Supreme Court decision supporting the general proposition that "a seizure unsupported by probable cause is unlawful." (ECF No. 100 at 24 (citing *Carroll v. U.S.,* 267 U.S. 132, 155-56 (1925).) That decision, however, concerned whether probable cause existed to arrest the criminal defendants for violating the National Prohibition Act, and thus has little to do with the facts of this case.

The Court is persuaded, on the other hand, that *Dempsey*—which was a 14-year old decision analyzing the statutory counterpart to Denver's disrupting lawful assembly ordinance at the time of Sodaro's arrest—was clearly established law of which the

Officers should have reasonably been aware.[5]  *See Kaufman,* 697 F.3d at 1302 ("An unambiguous statute and a case from the state's highest court analyzing that statute and confirming its plain meaning are sufficient to 'clearly establish' the contours of the Plaintiff's Fourth Amendment rights.").

Nevertheless, the Court is not prepared to say that *no* reasonable officer in the Officers' position—at least two of whom were direct witnesses—could have determined that Sodaro's conduct amounted to a violation of § 38-87 in light of *Dempsey*.  Put differently, based on *Dempsey* alone, the Court is unpersuaded that "a reasonable officer in [the Officers'] position would have had fair warning that [they] lacked probable cause to arrest" Sodaro for disrupting a lawful assembly, in view of the undisputed video evidence that she approached the temporary fence at the inauguration ceremony and began loudly chanting in protest of the City's treatment of the homeless.  *A.M.,* 830 F.3d at 1140; (ECF No. 101 at 01:27:00-01:29:00).

The facts of this case are not so aligned with those of *Dempsey* that it should have been patently obvious Sodaro's conduct fell short of disrupting a lawful assembly. Indeed, it is for the same reason this Court already found that reasonable minds could differ as to the "nature" of the inauguration ceremony at issue, the sort of protest activity that would have been acceptable at such an event, whether Sodaro exhibited the requisite intent to disrupt the inauguration ceremony in view of same, and whether her conduct indeed created a "significant" disruption.

As a result, the Officers are entitled to qualified immunity on Sodaro's Fourth

---

[5] This Court is not restricted to cases cited by Sodaro.  *See Cortez,* 478 F.3d at 1122 n.19 ("While it is true that Plaintiffs should cite to what constitutes a clearly established law, we are not restricted to the cases cited by them.").

Amendment unlawful seizure claim, and their Motion is granted in the same regard.

**B.     Fourth Amendment Malicious Prosecution (Claim Four)**

Sodaro cites Supreme Court and Tenth Circuit precedent for the notion that it is "clearly established law that police officers can be liable under § 1983 for malicious prosecution when they make materially false statements or omissions that form the basis of an arrest or prosecution."  ECF No. 100 at 23-24 (citing *Mally v. Briggs,* 475 U.S. 335, 345 (1986); *Wilkins v. DeReyes,* 528 F.3d 790, 805 (10th Cir. 2008) (rejecting qualified immunity for § 1983 malicious prosecution for allegedly fabricating evidence)). The Court agrees, and the Officers do not contend otherwise.  Accordingly, the Court focuses its analysis on the challenged substantive elements of Sodaro's § 1983 malicious prosecution claim.

In order to prevail on her malicious prosecution claim, Sodaro must show:

> (1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages.

*Montoya v. Vigil,* 898 F.3d 1056, 1066 (10th Cir. 2018) (quoting *Wilkins,* 528 F.3d at 799).  The Officers assert they are entitled to summary judgment because Sodaro cannot establish the third and fourth elements.

       1.    <u>Probable Cause</u>

At the outset, the Court notes that the relevant probable cause determination for a § 1983 plaintiff asserting malicious prosecution following a warrantless arrest is the one "made during the constitutionally-required probable cause hearing, which must occur *after* the initial warrantless arrest."  *Sanchez v. Hartley,* 810 F.3d 750, 757 (10th

Cir. 2016) (quoting *Wilkins,* 528 F.3d at 798) (internal quotation marks omitted). [6]  In other words*,* here, the precise question is not whether probable cause supported her original arrest but whether probable cause supported her subsequent continued confinement and prosecution.

Sodaro asserts that the Officers contributed to her continued confinement and prosecution by presenting probable cause statements to the prosecutor which "contained false statements that . . . Sodaro had substantially disrupted the inauguration ceremony, and omitted any statement that . . . Sodaro was making a First Amendment protest regarding the mistreatment of the homeless by Denver Police, which is protected speech."  (ECF No. 100 at 15-16; *see also* ECF No. 100-4.)  Thus, "[t]he proper question is whether, excluding fabricated evidence and including exculpatory evidence, probable cause existed for [Sodaro's] continued confinement."  *See McIntyre v. Unified Gov't of Wyandotte Cnty. & Kansas City, Kansas,* 2020 WL 1028303, at *16 n.16 (D. Kan. Mar. 3, 2020).

Excluding the statement that Sodaro caused a significant disruption at the inauguration would certainly have vitiated probable cause for her continued confinement and prosecution, given that it is a critical requisite for finding a violation of the disrupting a lawful assembly ordinance in the first instance, as discussed above.  *See* § 38-87; *Dempsey,* 117 P.3d at 805-09.  However, as an intermediate step, the Court finds that resolving the question of whether such inculpatory evidence was fabricated necessarily requires resolving whether Sodaro did, in fact, substantially disrupt the inauguration

---

[6] The Officers do not contest that such a probable cause determination was made. Thus, the Court will assume that it did for the purposes of resolving this Motion.

ceremony.  For the same reasons described in Section III.A.1 *infra,* the Court thus

concludes genuine issues of material fact preclude it from resolving that question as a

matter of law.

In addition, the Court is not convinced that a finding of arguable probable cause

entitling the Officers to qualified immunity on Sodaro's unlawful seizure claim should

automatically defeat her malicious prosecution claim. [7]  First, as already discussed, a

malicious prosecution claim concerns the probable cause determination made at

Sodaro's probable cause hearing—not the probable cause determination made at the

time of her warrantless arrest.  Second, in a recent unpublished decision, the Tenth

Circuit noted that while the § 1983 plaintiff had not "expressly challenge[d] the district

court's apparent application of the arguable-probable-cause standard" to the third

element of her malicious prosecution claim there was "*some support for a different*

*standard in our case law.*"  *Bailey v. Twomey,* 791 Fed. Appx. 724, 734 (10th Cir. 2019)

(emphasis added).  At least one other district court in this Circuit has concluded the

"arguable probable cause" standard is reserved for analyzing the clearly established law

prong of a qualified immunity defense to a Fourth Amendment unlawful seizure claim.

*McIntyre,* 2020 WL 1028303, at * 16 n.16.  After due consideration, the Court concludes

that at this time, in this Circuit, a showing of arguable probable cause is not sufficient to

defeat a Fourth Amendment malicious prosecution claim.

Thus, the Court reserves the questions of whether the Officers' representations

in their probable cause statements were fabricated, and in view of same, whether actual

---

[7] The Officers' Reply states Sodaro must establish the Officers lacked *arguable* probable cause in order to prevail.  (ECF No. 111 at 13-14.)  Sodaro, on the other hand, appears to rely on the "actual" probable cause standard.  (ECF No. 100 at 13-14.)

probable cause supported her continued confinement and prosecution, for resolution by the jury.

>       2.      Malice

In the context of a malicious prosecution claim, "[m]alice is shown if the primary motive of the defendant was a motive other than a motive to bring to justice a person thought to have committed a crime." *Barton v. City & Cnty. of Denver,* 432 F. Supp. 2d 1178, 1194 (D. Colo. 2006) (citing *Suchey v. Stiles,* 394 P.2d 739, 741 (Colo. 1961)). Particularly where the § 1983 plaintiff alleges the officer supplied false or misleading information that furthered the prosecution, malice may be inferred from a lack of probable cause. *Grobecker v. Grundy,* 2014 WL 3593513, at *9 (D. Colo. July 18, 2014) (citing *Montgomery Ward & Co. v. Pherson*, 272 P.2d 643, 646 (Colo. 1954)).

Thus, for the same reasons discussed above, the Court also concludes genuine issues of material fact remain as to whether the Officers acted with malice sufficient to find them liable for Sodaro's malicious prosecution claim.

## C.      First Amendment Retaliation (Claim Two)

To recover under a First Amendment retaliation claim, Sodaro must establish that

>       (1) she was 'engaged in a constitutionally protected activity,'
>       (2) the defendant's actions caused her to suffer an 'injury
>       that would chill a person of ordinary firmness from continuing
>       to engage in that [protected] activity,' and (3) the defendant's
>       actions 'were substantially motivated as a response to [her]
>       protected conduct.'

*McBeth v. Himes,* 598 F.3d 708, 717 (10th Cir. 2010) (quoting *Nielander v. Bd. Of County Comm'rs,* 582 F.3d 1155, 1165 (10th Cir. 2009)).  The Officers argue summary judgment is appropriate on Sodaro's First Amendment retaliation claim because (1) the Officers had probable cause, and (2) there is no evidence to suggest the Officers acted

with the requisite retaliatory motive.

### 1.     Probable Cause & the *Nieves* Exception

The Court will not rehash its discussion of probable cause.  However, the Court will briefly address Sodaro's invocation of the *Nieves* exception, as a potentially applicable exception to the probable cause requirement.

Generally, "[w]hen an unlawful arrest is at the heart of a First Amendment retaliation claim, such as here, a lack of probable cause must be shown."  *Nieves v. Bartlett,* 139 S.Ct. 1715, 1724 (2019); *see also Hinkle v. Beckham Cnty. Bd. of Cnty. Commissioners,* 962 F.3d 1204, 1227 (10th Cir. 2020) (holding plaintiff's retaliatory-arrest claim must fail where the officer had probable cause to arrest him).  *However,* there is a narrow exception where "a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been."  *Nieves,* 139 S.Ct. at 1727.

The Supreme Court recently explained that the *Nieves* exception is intended "to account for 'circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so.'"  *Gonzalez v. Trevino,* 144 S.Ct. 1663, 1667 (2024) (quoting *Nieves,* 587 U.S. at 406).  The "plaintiff must produce [objective] evidence to provide that his arrest occurred in such circumstances" but need not adduce "virtually identical and identifiable comparator[]" evidence.  *Gonzalez,* 144 S. Ct. at 1667.

Sodaro asserts that, even if the Officers had probable cause to arrest her, the *Nieves* exception should apply in this case because she "was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been."  (ECF No. 100 at 5 ¶ 5.)  In support, Sodaro directs the Court to the video

evidence appended to her Response.  (ECF No. 101.)  Sodaro similarly states in her declaration that "[d]uring the ceremony, therein [*sic*] were various speeches presented by government officials, that were responded to by the public with clapping and or shouting in support of the individuals and their speech very loudly."  (ECF No. 100-2 at 3 ¶ 8.)  However, Sodaro was the only person arrested.  (ECF No. 100-3 at 5 ("Q: And the other people that were making noise, did they get arrested? / A: No, they just got escorted out.").)

Viewing the evidence in the light most favorable to Sodaro, the Court finds this is sufficient evidence to create a genuine issue of material fact on the application of the *Nieves* exception, should the jury conclude probable cause supported her arrest.

a.    *Retaliatory Motive*

"The Supreme Court has held a plaintiff must show 'but-for' causation—meaning the adverse action against the plaintiff would not have been taken absent the retaliatory motive—to prove the third element of a First Amendment retaliation claim."  *Bustillos,* 98 F.4th at 1036 (citing *Nieves,* 139 S. Ct. at 1722.  Sodaro argues two categories of evidence are relevant to the Officers' alleged retaliatory motive:  (1) "[t]he video evidence of the inauguration ceremony," which "shows [her] being arrested within a temporal proximity of this First Amendment protest of Denver Police Misconduct" (ECF No. 100 at 22 (citing ECF No. 101 at 01:27:00 to 01:29:00; ECF No. 100-1 Decl. Sodaro pp. 1-5)); and (2) the Officers "and other Denver Police Officer's . . . long history of abuses against her in direct response to her First Amendment conduct" (ECF No. 100 at 22).

District courts in this Circuit have consistently found that a close temporal proximity between a plaintiff's protected speech and arrest without probable cause can

give rise to a "strong inference" the arrest was motivated by the protected speech. *See,*

*e.g.*, *Irizarry v. City & Cnty. of Denver,* 661 F. Supp. 3d 1073, 1091 (D. Colo. 2023).

And indeed, the video evidence shows that but a few seconds passed from when

Sodaro commenced chanting and when the Officers took her into custody. (ECF No.

101 at 01:27:00 to 01:29:00; *see also* ECF No. 100-1 at 4 ¶ 9 (stating the Officers

seized her "[i]mmediately" in response to her protest); ECF No. 95-3 at 41 ("Because

the police were there so fast and took me away so fast.  And it was just, like, what, a

minute, a moment in time . . . .").)

  The Court finds this evidence alone sufficient to create a genuine issue of

material fact as to whether the Officers acted with retaliatory motive.

    2. <u>Clearly Established Law</u>

  Finally, the Officers argue Sodaro "cannot establish that she had a clearly

established right to disrupt a public gathering."  (ECF No. 95 at 12.)  But, as the Court

has already discussed exhaustively herein, whether Sodaro in fact disrupted the

inauguration remains a fact issue.  On the other hand, the law was clearly established in

July 2019 that "'the First Amendment prohibits government officials from subjecting an

individual to retaliatory actions' for engaging in protected speech."  *Nieves,* 587 U.S. at

398 (quoting *Hartman v. Moore,* 547 U.S. 250, 256 (2006)); *see also Worrell v. Henry,*

219 F.3d 1197, 1212 (10th Cir. 2000) ("[A]ny form of official retaliation for exercising

one's freedom of speech, including prosecution, threatened prosecution, bad faith

investigations, and legal harassment constitutes an infringement of that freedom").

Thus, issues of fact preclude finding the Officers are entitled to qualified immunity on

Sodaro's First Amendment retaliation claim, and thus, the Court denies the Officers'

Motion in the same regard.

**D.     Supervisory Liability**

As a final point, the Officers argue that Chavez is entitled to summary judgment on Sodaro's claims against him under a supervisory liability theory.  (ECF No. 95 at 17.)  The Motion is granted to the extent that Chavez is also entitled to qualified immunity on Sodaro's Fourth Amendment unlawful seizure claim in his supervisory capacity as discussed above.  *Cf. Doe v. Woodward,* 912 F.3d 1278, 1299 (10th Cir. 2019) (holding all defendants, including supervisors, were entitled to qualified immunity where Fourth Amendment § 1983 claim failed at clearly established law prong).

However, the Officers concede in their Motion that it "can be established that Defendant Chavez was the supervisor on scene."  (ECF No. 95 at 18.)  And given that the Court has already concluded genuine issues of material fact preclude granting Chavez summary judgment on Sodaro's claims for Fourth Amendment malicious prosecution and First Amendment retaliation on a direct liability theory, the Court concludes those claims may also proceed to trial against Chavez on a supervisory liability theory.  (*Cf.* ECF No. 79 at 19 ("The Court has determined that Plaintiff adequately alleged Claims Two, Three, and Four against Defendant Chavez based on a theory of direct liability.  As such, the Court finds that the [supervisory liability] elements (1) personal involvement (2) causation, and (3) state of mind are met.").)  Accordingly, the Motion is denied with respect to Sodaro's Fourth Amendment malicious prosecution and First Amendment retaliation claims asserted on a supervisory liability theory.

### IV. CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1.     The Officers' Motion is GRANTED as to Sodaro's Fourth Amendment unlawful seizure claim;

2.  The Officers' Motion is DENIED as to Sodaro's Fourth Amendment malicious prosecution and First Amendment retaliation claims;

3.  This matter REMAINS SET for a Final Trial Preparation Conference on **November 6, 2024 at 10:30 a.m**., and a 5-day jury trial to commence on **November 18, 2024**, both in Courtroom A801.

    Dated this 7th day of October, 2024.

                                        BY THE COURT:


                                        _____
                                        William J. Martinez
                                        Senior United States District Judge